*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0241p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

Nos. 06-6426; 07-5221

ROBERT KIMBREL,

*Defendant-Appellant.*

> Appeal from the United States District Court
> for the Western District of Tennessee at Memphis.
> No. 03-20336—Jon Phipps McCalla, Chief District Judge.

Argued: June 12, 2008

Decided and Filed: July 3, 2008

Before: KEITH and SUTTON, Circuit Judges; ACKERMAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Karimbumkara Jayaraman, LAW OFFICES OF K. JAYARAMAN, Memphis, Tennessee, for Appellant. Jennifer Lawrence Webber, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Karimbumkara Jayaraman, LAW OFFICES OF K. JAYARAMAN, Memphis, Tennessee, for Appellant. Daniel T. French, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. Robert Kimbrel, Memphis, Tennessee, pro se.

---

## OPINION

---

SUTTON, Circuit Judge. Robert Kimbrel challenges his convictions and sentence for two firearms-related crimes on several grounds, including a *Batson* challenge. We vacate and remand for a new trial.

I.

Memphis police officers stopped Kimbrel for driving a car with expired registration tags. After discovering marijuana in the car, the officers arrested Kimbrel, and while conducting a safety

---

[*]The Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

sweep of the vehicle they discovered a semiautomatic pistol with obliterated serial numbers. A federal grand jury indicted Kimbrel for being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g), and for possession of a firearm with obliterated serial numbers, *see id.* § 922(k).

During *voir dire*, defense counsel exercised peremptory strikes against several potential jurors, all but one of whom were white. When defense counsel moved to strike another white juror, Lori Anne Goetz, the government raised an objection under *Batson v. Kentucky*, 476 U.S. 79 (1986). After hearing from the parties, the court sustained the objection, finding that the government had established a prima facie case of discrimination and that Kimbrel, "the party with the burden of persuasion regarding a nondiscriminatory basis[,] ha[d] failed" to produce a facially neutral justification for striking Goetz. JA 219. The jury convicted Kimbrel on both counts, and the court subsequently sentenced him to 262 months of incarceration and five years of supervised release.

## II.

## A.

Kimbrel challenges his convictions on several grounds, but one of them—his sufficiency-of-the-evidence claim—deserves consideration before the others. If he is right about that, nothing else (in this case) matters because the Double Jeopardy Clause would bar re-prosecution. *See Joseph v. Coyle*, 469 F.3d 441, 453–54 (6th Cir. 2006).

While sufficiency challenges receive priority treatment, they do not receive easy treatment. A defendant mounting a sufficiency challenge bears a "heavy burden," *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986) (internal quotation marks omitted), because he must show that, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). That burden, as Kimbrel acknowledges, is still heavier here because he failed to move for an acquittal at the close of all the proof, meaning that he must show a "manifest miscarriage of justice," *United States v. Abdullah*, 162 F.3d 897, 903 (6th Cir. 1998) (internal quotation marks omitted), or, as we have otherwise expressed the point, he must show that "the record is devoid of evidence pointing to guilt," *id.* (internal quotation marks omitted).

Kimbrel cannot shoulder this burden. He challenges both firearm-possession convictions on the same ground: that he never possessed the gun. Two pieces of evidence undermine that contention. David Pritchard, a prosecuting attorney who met with Kimbrel and his counsel in a proffer session, testified that after signing a proffer letter acknowledging that his statements could be used against him at trial, Kimbrel admitted he had possessed a firearm in March 2003 while a convicted felon. And one of the Memphis police officers involved in Kimbrel's arrest, Officer Charles Teeters, testified that while he was sitting in his squad car—with Kimbrel sitting behind him in the back seat—he saw his partner, Officer Charles Smith, recover a handgun while kneeling near the driver's seat of Kimbrel's car.

Nor, contrary to Kimbrel's contention, does this amount merely to "tenuous circumstantial evidence" that does not suffice to prove that he possessed the gun. Br. at 45. In the first place, Kimbrel's own admission that he possessed a gun at that time is not tenuous or circumstantial. In the second place, the government may indeed prove possession of a firearm by circumstantial evidence, which is why we will not overturn a felon-in-possession-of-a-firearm conviction "merely because [the jury] had to draw reasonable inferences to find [the defendant] guilty." *United States v. Arnold*, 486 F.3d 177, 181 (6th Cir. 2007) (en banc). Had Kimbrel raised his insufficiency claim properly below, it would be difficult to say that *no* rational juror could have inferred that Kimbrel possessed the gun on the date of the arrest. But we need not even say that: In the light cast by Teeters' and Pritchard's testimony, it is clear that the trial record is hardly "devoid of evidence

pointing to guilt," *Abdullah*, 162 F.3d at 903 (internal quotation marks omitted), meaning that Kimbrel's insufficiency claim must fail.

B.

Kimbrel next argues that the district court applied the wrong legal standard in sustaining the government's *Batson* objection to one of his peremptory challenges. Because this argument concerns an alleged mistake of law, it makes no difference whether we review this *Batson* challenge for clear error, as we have sometimes said, *see United States v. Copeland*, 321 F.3d 582, 599 (6th Cir. 2003), or review it de novo. In either event, a mistake of law generally satisfies clear-error, de-novo or for that matter abuse-of-discretion review. *See Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003).

*Batson* applies to peremptory challenges based on race or gender. *See United States v. Mahan*, 190 F.3d 416, 424 (6th Cir. 1999). And it applies to peremptory challenges by the government and by criminal defendants. *See Georgia v. McCollum*, 505 U.S. 42, 59 (1992).

The same three-step inquiry governs challenges to peremptory strikes in each setting. *See Mahan*, 190 F.3d at 424 & n.1. At step one, the party opposing the strike must establish a prima facie case of race or gender discrimination. *See United States v. Watford*, 468 F.3d 891, 911–12 (6th Cir. 2006). As here, that required the government to show that "the relevant circumstances raise an inference that the proponent of the strike excluded prospective jurors from the petit jury because of their race." *Id.* at 912. At step two, the proponent of the strike (here Kimbrel) must proffer a facially valid, race-neutral explanation for the challenge. *See id.* At step three, if the proponent has produced a facially valid explanation for the strike, the trial court must decide whether the opponent has proved purposeful discrimination. *See id.* To do so, the court must "assess the [proponent's] credibility under all of the pertinent circumstances, and then . . . weigh the asserted justification against the strength of the [opponent's] prima facie case under the totality of the circumstances." *Paschal v. Flagstar Bank*, 295 F.3d 565, 574 (6th Cir. 2002) (internal quotation marks omitted).

In addressing (and reviewing) a *Batson* challenge, two points deserve emphasis. Although the burden of *production* switches after step one and again after step two, "the ultimate burden of *persuasion* regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam) (emphasis added); *see also McCurdy v. Montgomery County*, 240 F.3d 512, 521 (6th Cir. 2001). And the trial court may not short circuit the process by consolidating any two of the steps. *See Purkett*, 514 U.S. at 768; *United States v. McFerron*, 163 F.3d 952, 955 (6th Cir. 1998).

Two cases illustrate these principles. In *Purkett*, the Supreme Court held that the trial court cannot inquire at step two—where the proponent's burden is merely to provide a facially valid explanation—whether the tendered explanation is "plausible" or even "minimally persuasive." *See* 514 U.S. at 768 (internal quotation marks omitted). The strike proponent can fail at step two only if "a discriminatory intent is *inherent* in [its] explanation" for the strike. *Id.* (internal quotation marks omitted and emphasis added). To rule otherwise, the Court explained, would impermissibly shift the burden of persuasion from the strike opponent to its proponent. *See id.*

In *McFerron*, after the government opposed McFerron's peremptory strike and established its prima facie case, the district court evaluated McFerron's proffered explanations for striking each of the five prospective jurors at issue. *See* 163 F.3d at 953–54. In each instance, without first acknowledging that McFerron had produced facially valid explanations, the court assessed the persuasiveness of McFerron's justifications and rejected each one as pretextual. *See id.* In reversing the conviction, we explained that the district court had conflated the second and third steps and, in the process, placed the burden of persuasion on the strike proponent. *See id.* at 955. Because

McFerron had come forward with reasons for the strikes that were not facially discriminatory, the district court erred by not proceeding immediately to step three, where *Batson* and *Purkett* make clear that the burden remains on the strike opponent. *See id.* The record in *McFerron*, moreover, removed any doubt about the district court's improper allocation of the burden of persuasion: It stated repeatedly that McFerron, the strike proponent, had "failed in her burden of persuasion regarding a nondiscriminatory basis" for the strike. *See id.* at 953–54.

The district court's handling of the government's *Batson* challenge in this case is reminiscent of *Purkett* and *McFerron*. After the government objected to Kimbrel's peremptory strike of Goetz and advanced a prima facie case for discrimination, the court moved to step two and asked defense counsel to provide a nondiscriminatory explanation. During the ensuing colloquy with the court, Kimbrel's counsel proceeded to articulate his race-neutral reason for the strike, explaining that he "detected a bit of ego there that [he] thought might color her role as a juror," as Goetz had seemed "too assured and too comfortable and too confident" and left the impression that "she was relishing a little bit too much the possibility of being in the court." JA 215–16. After the district court pressed counsel for some further explanation, *see* JA 215 ("You sure you don't have another [explanation]? I would be glad to hear another one."), it turned to the government for a response. The government contested defense counsel's assertion that Goetz had displayed "ego" or any similar attribute that "would somehow affect her role as a juror." JA 216–17. Kimbrel's counsel rejoined that the decision to strike was "just a gut call" based on a perception that "there might be something there that would tend to be very powerful in the jury." JA 217.

The district court then analyzed the government's objection. After finding that the government had established a prima facie case of purposeful discrimination, the court determined that Kimbrel had failed to satisfy *his* burden of persuasion. The court expressed doubt about defense counsel's proffered reason, noting that Goetz's disclosure of her indirect connection to another case before the court did not justify the strike, and explaining that "[t]he thing that distinguishes this lady is her race." JA 219. The court thus not only conflated steps two and three of the *Batson* analysis—assessing the persuasiveness of Kimbrel's proffered explanation without first acknowledging that he had come forward with a race-neutral justification—but it also explicitly indicated that Kimbrel, the proponent of the strike, bore the burden of persuasion. *See id.* (concluding that "the party with the burden of persuasion regarding a nondiscriminatory basis has failed in this particular situation" and thus sustaining the government's *Batson* objection). If these types of errors required reversal in *Purkett* and *McFerron*, they require reversal here.

In defending the district court's ruling, the government argues that Kimbrel never produced a race-neutral explanation for the strike. Not true. As the Supreme Court and this court have explained, the reason offered must be "clear and reasonably specific," *Batson*, 476 U.S. at 98 n.20 (internal quotation marks omitted), must be "related to the particular case to be tried," *id.* at 98, and must amount to more than a "mere denial of an impermissible motive [or] assertion of good faith," *United States v. Hill*, 146 F.3d 337, 341 (6th Cir. 1998). Beyond that, a defendant is not required to produce "a reason that makes sense, but [only] a reason that does not deny equal protection." *Purkett*, 514 U.S. at 768; *see also id.* ("Unless a discriminatory intent is inherent in the [strike proponent's] explanation, the reason offered will be deemed race neutral.") (internal quotation marks omitted). The district court, to be sure, can and should *eventually* reject explanations that are "implausible," "fantastic," "silly," "superstitious," or otherwise reflect pretext. *See id.* But it generally may do so only at step three—when the explanations are stacked up against the strike opponent's prima facie case—and it must take care not to alleviate the opponent of its burden of persuasion. *See id.* At step two, by contrast, the district court may not even inquire whether the tendered explanation is "plausible" or even "minimally persuasive." *Id.* (internal quotation marks omitted).

Whether the race-neutral reasons offered by Kimbrel's counsel—his sense that Goetz had "a bit of ego," JA 216, and "was relishing a little bit too much the possibility of being in the court," JA 215—would have satisfied step three of the *Batson* inquiry need not detain us. The point is that they sufficed at the second step: The offered reasons were related to the case, were reasonably clear and did not simply disclaim discriminatory intent. *Cf. McFerron*, 163 F.3d at 953, 955 (holding that defense counsel's proffered reason for peremptory strikes, including that defense counsel "just got a feeling from [a potential juror] that he would not be able to be as impartial as other jurors" based on "something in the tone of his voice," satisfied step two) (internal quotation marks omitted). Once the defendant met this modest threshold, he satisfied his obligation at step two, and the district court erred in ruling to the contrary.

Attempting to distinguish *McFerron*, the government argues that the district court in that case truly stopped at *Batson*'s second step, whereas in this case the court, "despite [its] facial misstatement of law," ultimately did engage in the balancing analysis required by *Batson*'s third step, weighing defense counsel's credibility against the evidence of discrimination. Br. at 24. But this gloss on the proceedings emanates from something other than the record. Based on what the court said, it rejected Kimbrel's race-neutral explanations at step two of the process. This thus is not a case where, despite the district court's "less than ideal" application of *Batson*, it ultimately did engage in each of the required steps. *Paschal*, 295 F.3d at 576. But even if we were to say that the district court *did* reach step three (in substance, if not in name), that does nothing to cure the problem that it explicitly misallocated the burden of persuasion—not just once but twice.

At oral argument, the government suggested that even if the district court misapplied *Batson*, this court can determine for itself whether the government satisfied its ultimate burden of persuasion. But when faced with a nearly identical situation in *McFerron*, we did not follow that course. *See* 163 F.3d at 955–56. And for good reason: *Batson*'s third step, which asks whether a peremptory strike is motivated by purposeful discrimination and whether proffered neutral justifications are mere pretext, presents factual questions that hinge on ring-side credibility determinations that no appellate court can fairly make on the basis of a non-sentient record. *See Watford*, 468 F.3d at 911, 914–15.

The government argues that even if the district court erred by placing the burden of persuasion on Kimbrel instead of on the prosecution, any error was harmless. *See* Fed. R. Crim. P. 52(a). Not all errors, however, are susceptible to harmless-error review. Only "trial error[s]"—that is, errors "which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt"—are appropriately subject to harmless-error review. *Arizona v. Fulminante*, 499 U.S. 279, 307–08 (1991). "Structural" errors, by contrast, which affect the "entire conduct of the trial from beginning to end," are not subject to harmless-error review. *Id.* at 309. In *McFerron*, the court held that *Batson* errors represent structural errors, a decision that binds us here. *See* 163 F.3d at 955–56; *see also United States v. Harris*, 192 F.3d 580, 588 (6th Cir. 1999).

Contrary to the government's suggestion, *United States v. Martinez-Salazar*, 528 U.S. 304 (2000), does not pull the legs out from under *McFerron*. *Martinez-Salazar* dealt with two other issues: whether a defendant is obliged to use a peremptory strike to cure a trial court's erroneous decision not to strike a juror for cause; and whether the Due Process Clause entitles a defendant who does elect to use a peremptory challenge to remove such a juror to an automatic reversal of his conviction. *See id.* at 307. The decision simply does not hold that *Batson* errors are not structural errors.

That brings us to the question of remedy, a point about which the parties have had little to say. So far as the government has been concerned, the sole question before us is whether the district

court conducted a proper *Batson* inquiry, as guided by our decision in *McFerron*. In *McFerron*, once the court determined that a *Batson* violation had occurred, it reversed the conviction and sent the case back for a new trial. *See* 163 F.3d at 956. Absent any argument for a different approach, we follow the same path here.

III.

For these reasons, while sufficient evidence supported the convictions, we vacate the convictions and sentence on the ground that the district court conducted a flawed *Batson* analysis. Kimbrel is entitled to a new trial.