NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0236n.06

No. 07-6123

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 18, 2011
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,  )
                            )
    Plaintiff-Appellee,   )
                            )
v.                          )  ON APPEAL FROM THE UNITED
                            )  STATES DISTRICT COURT FOR THE
MARTRELL RANSON,            )  WESTERN DISTRICT OF TENNESSEE
                            )
    Defendant-Appellant.  )

Before: KENNEDY, BOGGS and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. George Vannockay called the Memphis Police Department early in the morning of May 13, 2006, to report a carjacking. Police found Martrell Ranson driving Vannockay's gold Chevy Lumina the next day and were trying to pull Ranson over when he leapt from the car and took off, dropping a pistol as he fled. Police caught Ranson and arrested him. Vannockay picked him out of a lineup, and Ranson pled guilty to unlawfully possessing a firearm. *See* 18 U.S.C. § 922(g). At sentencing, Ranson insisted that Vannockay had loaned him the car in exchange for crack cocaine, but the district court credited Vannockay's contrary testimony and enhanced Ranson's sentence on the ground that the underlying offense "involved carjacking." U.S.S.G. § 2B3.1(b)(5). Ranson challenges the district court's credibility determination on appeal.

The district court heard divergent accounts of the events leading to Vannockay's call to the police. Vannockay said he left his apartment a little after midnight to drive to a nearby convenience

store. As he approached his car, Ranson and another man walked up and asked to bum a cigarette. Vannockay, who had never seen the men before, obliged and turned to get in his car, but as he sat down in the driver's seat, Ranson blocked him from closing the door. He flashed a pistol at his hip and ordered Vannockay to start the car and to place his cell phone and wallet in the passenger's seat. Ranson ordered him out of the car and drove off with the other man. Vannockay returned to his apartment, told his wife and called the police.

Ranson and his cousin, Kevin Caldwell, told a different story. They had known Vannockay for some time. Vannockay frequented the apartment complex where Caldwell lived and where Ranson sometimes stayed, mainly because he made daily purchases of crack cocaine from Ranson and other dealers. After buying the drugs, Vannockay typically would call on a prostitute named Necci who lived in the complex and took drugs as payment. Sometimes, if he was low on cash, Vannockay would loan a dealer his car while he visited Necci, and that, according to Ranson, is what happened here. Ranson gave Vannockay some drugs and arranged to borrow his car for a few hours. One thing led to another, and Ranson did not return for over twelve hours, but he "planned on throwing [Vannockay] a few extra dollars" for the inconvenience. R.53 at 51. When Ranson returned to the complex around 2:00 a.m., however, he could not find Vannockay, so he parked the car on the street where Vannockay could see it. The next morning, Ranson "had a couple more errands to run," so he borrowed the car again until the police found him later that day. *Id.* at 57. Vannockay, Ranson suspects, must have grown scared when he could not find Ranson or the car and invented the carjacking tale to hide the truth from his wife.

No. 07-6123
*United States v. Ranson*

Choosing between competing accounts of this nature is a task usually reserved "for the trial court, not for the court of appeals," *United States v. Roche*, 321 F.3d 607, 611 (6th Cir. 2003), and with good reason. The district court presides over the sentencing hearing, where it hears the witnesses' testimony and eyes their manner. Instead of having a front row seat to this testimony, we must settle for a lifeless transcript, drained of context, precluding us from making our own fully informed credibility determination. We thus review findings of this type for clear error, *United States v. Esteppe*, 483 F.3d 447, 452 (6th Cir. 2007), upholding the district court's credibility finding unless the record leaves us "with the definite and firm conviction" that it made a mistake, *United States v. Johnston*, 595 F.3d 292, 295 (6th Cir. 2010) (quoting *United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008)).

The district court permissibly credited Vannockay's testimony, and *United States v. Ables*, 167 F.3d 1021 (6th Cir. 1999), marks the path showing why. Ables was charged with operating an illegal gambling business, *see* 18 U.S.C. § 1955, and faced a four-level enhancement as "an organizer or leader," *see* U.S.S.G. § 3B1.1(a). *Ables*, 167 F.3d at 1023, 1034. The district court heard competing testimony about the leadership issue. *Id.* at 1035. The district court applied the enhancement, and we concluded that its "choice between two permissible views of the evidence [could not] . . . be clearly erroneous." *Id*. The district court's "decision to credit the testimony of one of two or more witnesses" was "virtually" unassailable, even where both sides "told a coherent and facially plausible story," given the standard of review. *Id*. So too here: The district court credited a plausible account of the events at hand.

No doubt, as Ranson points out, Vannockay's testimony raised questions. He acknowledged on cross-examination that he knew people at Caldwell and Ranson's apartment complex, including Necci, though he did not know that she was a prostitute and maintained that their relationship was "[j]ust social." R.53 at 25. When pressed, he explained that he "met her somewhere around Wal-Mart." *Id.* at 25. Vannockay also was "not going to say [he] never" used crack cocaine, though he insisted he was not using it at the time. *Id.* at 17–18. He was living on disability for "a vision impairment" but professed that only one eye ailed him and that he could see well enough to drive, even at night. *Id.* at 17. Some of Vannockay's statements surely qualify as curious, but they "hardly present the kinds of clear inconsistencies that compel us to cast aside the district court's credibility assessment." *United States v. Mitchell*, 295 F. App'x 799, 803 (6th Cir. 2008) (internal quotation marks omitted). In particular, Vannockay said nothing at the sentencing hearing that contradicted his account of the carjacking.

Compare this to the deficiencies in Ranson and Caldwell's testimony. Ranson first told police that he borrowed the car from "Mike," not Vannockay. R.53 at 82–83. Caldwell and Ranson also seemed to disagree about how often Ranson sold drugs to Vannockay. Caldwell suggested that Ranson was Vannockay's primary dealer and that Vannockay went to other dealers only if Ranson was not around. Vannockay would come to see Caldwell and Ranson almost "every day" and loaned out his vehicle "five or ten times a month." *Id.* at 44. Ranson's estimates were more modest. He sold to Vannockay only "five times" in a two-year span and borrowed the car on "three or four" occasions. *Id.* at 54–55. When asked to identify the cars he and Ranson had borrowed from

Vannockay in the past, Caldwell listed a burgundy Ford Escort, a burgundy Ford Ranger and a red Ford Mustang that supposedly belonged to Vannockay's twenty-four-year-old daughter. Yet other evidence failed to show that Vannockay owned any such cars and suggested only that he had a seven-year-old daughter. The district court also found that Ranson's flight from police "suggests a consciousness of guilt that goes beyond mere possession of the firearm. And it strongly suggests the possibility that this vehicle was stolen and that Mr. Ranson knew it was stolen because he had stolen it himself." *Id.* at 81.

The district court, to be sure, faced a difficult task in sifting through the competing stories, but it is precisely this kind of "ring-side credibility determination[] that no appellate court can fairly make on the basis of a non-sentient record." *United States v. Kimbrel*, 532 F.3d 461, 468 (6th Cir. 2008). Because ample evidence supports the district court's credibility finding, we affirm.