NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0308n.06

No. 09-4194

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**May 11, 2011**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

     **Plaintiff-Appellee,**

v.

ALARIC F. SIMON,

     **Defendant-Appellant.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

                                             /

BEFORE:    BATCHELDER, Chief Judge, CLAY, and SUTTON, Circuit Judges.

**CLAY, Circuit Judge.**  Defendant Alaric F. Simon, convicted by jury of conspiracy to distribute and to possess with intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and sentenced to ten years of incarceration, appeals the district court's judgment denying his claim that the prosecution violated *Batson v. Kentucky*, 476 U.S. 79 (1986), when it used a peremptory strike to exclude an African-American juror from the jury venire. This is the second time this matter has been before this Court; in 2008, a panel of this Court reversed and remanded a district court order denying Defendant's *Batson* claim on grounds that the district court failed to apply the correct legal standard. *See United States v. Torres-Ramos*, 536 F.3d 542, 558–60 (6th Cir. 2008). On remand, the district court once again denied Defendant's *Batson*

claim. Defendant now appeals. For the reasons set forth below, the judgment of the district court is **AFFIRMED**.

## BACKGROUND

On May 26, 2004, Defendant Alaric F. Simon was arrested in Shelby County, Ohio, after accepting delivery of nine kilograms of cocaine from co-felons who, unbeknownst to him, had entered into a cooperation agreement with the authorities. Defendant was indicted on one count of conspiracy to distribute and to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Defendant pleaded not guilty to the charges, as did his co-felon, Rudolph Rhaburn, and their case proceeded to jury trial before the United States District Court for the Southern District of Ohio.

On December 8, 2005, jury selection began. The initial jury venire was comprised of fifty-six potential jurors: fifty Caucasians, five African-Americans, and one Asian-American. After fifteen jurors were excused for cause, thirty-six Caucasians, four African-Americans, and one Asian-American remained on the panel. During voir dire, the prosecution was given nine peremptory strikes, while the defense[1] was given fifteen. The defense used its peremptory challenges to exclude eight Caucasian jurors and passed on its remaining seven remaining strikes. The prosecution used its peremptory challenges to exclude three Caucasian jurors as well as Juror No. 26, who is African-American.

Defendant, who is African-American, objected under *Batson v. Kentucky* and a hearing was held to determine whether the prosecution's strike of Juror No. 26 was racially motivated. When

---

[1] Defendant was tried together with his co-felon, Rudolph Rhaburn.

asked to explain the basis for its strike, the prosecution stated that Juror No. 26 had been excluded

because of his perceived lack of intelligence, which the prosecution believed was important because

"the more intelligent the juror is, the better they will see between good evidence and things that

might divert their attention from the facts of guilt."

In explaining why Juror No. 26 appeared to be less intelligent, the prosecution cited Juror No.

26's educational background, which reflected that he had received a high school diploma and taken

classes at a community college and career center. The prosecution also cited Juror No. 26's

employment status, specifically, the fact that he had been laid off from his job as a factory worker

where his responsibilities had been limited. While the prosecution made a passing reference to Juror

No. 26's "blue collar" appearance and so-called unsophisticated handwriting, the prosecution

explained that education and employment status were the principal reasons for its strike, stating:

> We can't look at individuals and determine whether they are intelligent or not. All
> we can do is discern from their level of education what—the amount of schooling
> they have had and tell us about on the questionnaire, what employment they have,
> what their life situation is and the information that they provide in the courtroom in
> answering questions.

The prosecution explicitly linked Juror No. 26's employment status to his perceived level of

intelligence, stating, "I think that somebody who has been laid off and unemployed hasn't, for

whatever reason, not been able to obtain another type of employment is not the type of juror that we

want to discern this evidence."

After considering the prosecution's race neutral explanation, the district court rejected

Defendant's *Batson* objection. The district court stated that while Juror No. 26's jury questionnaire

did not support the prosecution's conclusion that Juror No. 26 would be an unsuitable jury member,

the court was unable to conclude that the prosecution's explanation was a pretext for purposeful discrimination, based on the totality of the circumstances. The district court reasoned that one African-American juror still remained on the jury venire, and that the only other African-American to be excused from the jury had been excused for cause. The district court also noted that the prosecution had used its peremptory strikes to exclude several Caucasian jurors whose educational backgrounds were similar to Juror No. 26, lending credibility to the prosecution's race neutral explanation. However, the district court failed to engage in a systematic comparison of jurors excluded by the prosecution and jurors who were not excluded, to determine whether Juror No. 26 was similarly situated to jurors who remained on the panel.

The final jury impaneled for Defendant's trial was comprised of eleven Caucasian jurors, one African-American juror, and two alternate jurors who were Asian-American and Caucasian, respectively. On December 16, 2005, following a one-week trial, Defendant was convicted of one count of conspiracy to distribute and to possess with the intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Defendant was sentenced to ten years of incarceration, five years supervised release, and 100 hours of community service.

Defendant filed a timely notice of appeal, seeking review of his sentence and conviction on grounds that (1) evidence supporting the conviction should have been suppressed under the Fourth Amendment exclusionary rule; (2) his arrest was not supported by probable cause; (3) his conviction was not supported by sufficient evidence; and (4) the prosecution impermissibly struck an African-American juror in violation of *Batson*.

In a decision dated August 7, 2008, a panel of this Court affirmed the district court with respect to the first three claims, but reversed and remanded its *Batson* determination on grounds that the district court misapplied the legal standard for *Batson* challenges. *See Torres-Ramos*, 536 F.3d at 558–60. Noting that "the presence of one African-American on the jury does not preclude a *Batson* challenge," *id.* at 558, the panel held that the district court erred when it failed to conduct a comparative juror analysis and examine at least three Caucasian jurors whose backgrounds were similar to Juror No. 26's but who remained on the jury.[2] The panel stated:

> In the instant case, rather than engaging in side-by-side comparisons of some black venire panelists who were struck and white ones who were not, the district court compared the excluded African-American to other, white panelists who had also been excluded. In other words, rather than asking whether similarly situated people were treated differently, the district court instead searched for similarly situated people who were treated the same. This kind of inquiry, which seeks similarity and ignores differences, is not what the Equal Protection Clause requires.

*Id.* at 560 (internal citations and quotation marks omitted). The panel also stated that the district court erred when it failed to examine the jury questionnaires and other forms of relevant and "easily available" evidence before making its *Batson* ruling. Accordingly, the panel reversed and remanded to the district court for reconsideration of whether, in light of additional evidence, Defendant's *Batson* challenge "requires that his conviction be reversed." *Id.* at 561.

On remand, the parties agreed to forgo a hearing and have decision on the briefs. The district court received additional briefing as well as evidence in the form of jury questionnaires, an official

---

[2] The three Caucasian jurors who were referred to by the panel have since been identified as Juror Nos. 19, 21, and 23. Defendant has also identified three additional non-excluded jurors whom he believes are similarly situated to Juror No. 26. These are Juror Nos. 2, 11, and 17.

jury list and the courtroom deputy's notes on the jury list, the voir dire transcript, an affidavit from the prosecutor, and the prosecutor's personal memoranda.

In an opinion dated September 8, 2009, the district court affirmed its *Batson* ruling. The district court held that Juror No. 26 was not similarly situated to any of the jurors who remained on the panel, including the three Caucasian jurors referred to by this Court. The district court distinguished the non-excluded jurors based on their employment status—noting that while several jurors did not have college educations, they had jobs, were self-employed, homemakers, or retired. The district court also commented on the character of the other jurors' jobs—noting that when employed, Juror No. 26 had engaged in "routine and repetitive" factory work, while the jurors who remained on the panel had jobs that required the exercise of creativity or responsibility. The district court proceeded to deny Defendant's *Batson* claim, concluding, "the Government struck [Juror No. 26] because it believed that his lack of employment demonstrated that he was not intelligent enough to be a good juror."

Defendant filed this timely appeal.

## DISCUSSION

### I. The District Court's Judgment Regarding Defendant's *Batson* Challenge

#### A. Standard of Review

Because "[a]n appellate court, confined to reviewing transcripts from voir dire, is not as well positioned as the trial court is to make credibility determinations," we review a district court's determination of a *Batson* challenge for clear error. *United States v. Watford*, 468 F.3d 891, 914 (6th Cir. 2006) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003) (internal quotation marks

omitted)); *see also Snyder v. Louisiana*, 552 U.S. 472, 477 (2008); *United States v. Odeneal*, 517 F.3d 406, 413 (6th Cir. 2008). However, "[d]eference does not by definition preclude relief," *Cockrell*, 537 U.S. at 340, and when a district court makes an erroneous *Batson* determination, it is structural error mandating retrial. *See United States v. McFerron*, 163 F.3d 952, 955–56 (6th Cir. 1998).

**B.      Elements of a *Batson* Challenge**

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court held that the Equal Protection Clause forbids the prosecution's use of peremptory challenges to exclude jurors on the basis of race. This holding has since been expanded to forbid the use of peremptory challenges motivated by gender; to forbid the use of discriminatory strikes by the defense; and to permit *Batson* claims when jurors of a different race than the defendant are excluded from the jury pool. *See, e.g., J.E.B. v. Alabama ex rel. T. B.*, 511 U.S. 127, 129–31 (1994) (banning strikes based on gender); *Georgia v. McCollum*, 505 U.S. 42, 59 (1992) (discussing reverse *Batson* strikes by the defense); *Powers v. Ohio*, 499 U.S. 400, 402 (1991) (discussing cross-racial *Batson* challenges).

When a party raises a *Batson* challenge, courts must perform a three-step analysis. "First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race." *Rice v. Collins*, 546 U.S. 333, 338 (2006). A defendant establishes a prima facie case when:

> (1) he is a member of a cognizable racial group; (2) the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race; and (3) these facts and other relevant circumstances raise an inference that the prosecutor used that practice to exclude the venire men from the petit jury on account of their race.

*Odeneal*, 517 F.3d at 418–19.

Once a prima facie case is established, "the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question." *Rice*, 546 U.S. at 338. At this stage, "the prosecutor's race-neutral explanation need not be "particularly persuasive, or even plausible, so long as it is neutral." *Torres-Ramos*, 536 F.3d at 559 (citing *United States v. Harris*, 192 F.3d 580, 586 (6th Cir. 1999)); *see also United States v. Kimbrel*, 532 F.3d 461, 467 (6th Cir. 2008) ("Unless a discriminatory intent is inherent in the [strike proponent's] explanation, the reason offered will be deemed race neutral.") (citing *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam)).

However, "the trial judge cannot simply accept the prosecution's explanation on its face." *Torres-Ramos*, 536 F.3d at 559 (internal citations and quotation marks omitted). Rather, as a final step, reviewing courts must assess the prosecutor's credibility, weigh the strength of the prosecution's asserted justification against the defendant's prima facie case, and determine whether a defendant has carried his burden of proving purposeful discrimination in light of all relevant circumstances, including comparative juror analysis and arguments related to pretext. *See, e.g., Odeneal*, 517 F.3d at 419–20; *Kimbrel*, 532 F.3d at 466. "In the end, the ultimate burden of persuasion always rests with the party challenging the strike." *United States v. Cecil*, 615 F.3d 678, 686 (6th Cir. 2010); *see also United States v. Tucker*, 90 F.3d 1135, 1142 (6th Cir. 1996) (describing *Batson* as a preponderance of evidence test).

Where, as here, the trial court has heard and ruled on the prosecution's asserted race neutral justification, "the issue of whether the defendant made a sufficient prima facie showing becomes moot." *Tucker*, 90 F.3d at 1142 (citing *Hernandez v. New York*, 500 U.S. 352, 358–59 (1991)

(plurality opinion)); *accord Braxton v. Gansheimer*, 561 F.3d 453, 461 (6th Cir. 2009). Therefore, the sole issue presented in this appeal is whether Defendant established "by a preponderance of the evidence that the peremptory strikes were intentionally discriminatory." *Tucker*, 90 F.3d at 1142.

### C. Analysis

#### 1. Comparative juror analysis does not establish purposeful discrimination

"If a prosecutor's proffered reason for striking a black panelist equally applies to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination." *Odeneal*, 517 F.3d at 420 (quoting *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005)). In the instant case, the prosecution struck Juror No. 26 based on his perceived lack of intelligence, as demonstrated by his employment status and educational background, while retaining a total of six Caucasian jurors who had similar educational backgrounds—*e.g.,* high school diplomas with some additional community college coursework or vocational training.

Had the prosecution based its peremptory strike on educational status alone, Defendant on this record may well have carried his burden of establishing pretext. *See Odeneal*, 517 F.3d at 420 (finding *Batson* violation in light of "unexplained disparate treatment"). However, in making its initial proffer, the prosecution stated that it was striking Juror No. 26 because of his educational background as well as his employment status, specifically, the fact that he was a laid off factory worker. Peremptory strikes may be validly exercised on the basis of employment status and occupation. *See United States v. Yang*, 281 F.3d 534, 549 (6th Cir. 2002); *accord United States v. Cruz-Escoto*, 476 F.3d 1081, 1089–90 (9th Cir. 2007); *United States v. Thompson*, 450 F.3d 840,

843–44 (8th Cir. 2006); *Howard v. Moore*, 131 F.3d 399, 408 (4th Cir. 1997); *Garcia v. Excel Corp.*, 102 F.3d 758, 760 (5th Cir. 1997); *United States v. Hunter*, 86 F.3d 679, 683 (7th Cir. 1996).

Because the prosecution's statement that it was considering jurors' employment status did not "reek[] of afterthought," *Dretke*, 545 U.S. at 246, employment status may be regarded as a material distinction for purposes of comparative juror analysis. Although a number of non-excluded jurors had high school educations and blue collar or low skilled jobs,[3] only one non-excluded juror had a high school education and was also unemployed at the time of jury selection. This juror—Juror No. 17—was Caucasian, 45 years old, and a high school graduate who attended beauty school but left her position as the owner of a hair salon to become a stay at home mom. When asked to conduct a juror comparison on remand, the district court found that Juror No. 17's employment history, the voluntary nature of her unemployment, and her previous job duties sufficiently distinguished her from the excluded juror.

Although jurors need not be identical to support a *Batson* challenge, *Odeneal*, 517 F.3d at 420, we believe the differences between these two jurors were meaningful. Accordingly, we conclude that the district court did not commit clear error when it held that comparative juror analysis failed to establish pretext.

### 2. The totality of circumstances do not support a finding of purposeful discrimination

---

[3] Juror No. 19, a 44-year-old Caucasian female, was a high school graduate who trained and cared for horses; Juror No. 21, a 70-year-old Caucasian female, was a high school graduate self-employed as a dance teacher; and Juror No. 23, a 40-year-old Caucasian male, was a high school graduate who worked in shipping and receiving.

While the final racial composition of a jury and similarities between *excluded* jurors are not determinative of whether a *Batson* violation occurred, *see Torres-Ramos*, 536 F.3d at 559–60, *Harris*, 192 F.3d at 587 ("[T]he presence of one African-American on the jury does not preclude a *Batson* challenge"), they are still factors relevant to the totality of the circumstances. *See United States v. Sangineto-Miranda*, 859 F.2d 1501, 1520–21 (6th Cir. 1990) (discussing factors); *see also United States v. Hill*, 146 F.3d 337, 342 (6th Cir. 1998) (noting that the final makeup of a jury can be considered).

In the instant case, the prosecution used peremptory challenges to exclude a total of four jurors: Juror Nos. 26, 30, 25, and 56. Juror No. 26 was the only African-American juror excluded through the prosecution's use of a peremptory strike, and the prosecution waived a number of its peremptory challenges, "leaving open the possibility that an African-American might be on the jury." *Tucker*, 90 F.3d at 1135 (citing *Sangineto-Miranda*, 859 F.2d at 1522). With the exception of Juror No. 30, who appears to have been dismissed for perceived bias,[4] the excluded jurors all shared educational and employment characteristics in common: all three jurors failed to complete a college degree, and all three were unemployed at the time of jury selection. These factors militate against a finding of pretext, and they support the district court's conclusion that discrimination did not motivate the prosecution's use of peremptory strikes.

Accordingly, we hold that the district did not commit clear error when it found that Defendant failed to carry his burden of establishing purposeful discrimination.

---

[4] Juror No. 30 disclosed to the district court that she had a close family member who suffered from drug addiction.

**CONCLUSION**

Because the district court did not commit clear error when it held that Defendant failed to carry his burden of establishing purposeful discrimination, we **AFFIRM** the judgment of the district court.