NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0704n.06

No. 12-6617

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 31, 2013
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff - Appellee, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE MIDDLE |
| DARIN LEE MCALLISTER, | ) DISTRICT OF TENNESSEE |
| | ) |
| Defendant - Appellant. | ) |
| | ) |

BEFORE: KEITH, MCKEAGUE, and DONALD, Circuit Judges.

**DAMON J. KEITH, Circuit Judge**. In this appeal, we review the district court's order rejecting Defendant Darin Lee McAllister's challenge to the Government's use of peremptory strikes against an African-American juror, Juror Willy Jerome Ewing, under *Batson v. Kentucky*, 476 U.S. 79 (1986). For the following reasons, we affirm the district court.

## BACKGROUND

This is our second review of McAllister's *Batson* challenge. In our first review, we found that the district court committed an error that prevented us from reviewing its *Batson* analysis. *United States v McAllister*, 693 F.3d 572, 582 (6th Cir. 2012). As a result, we remanded McAllister's case, directing the district court to comply with its burden under *Batson* to make "explicit on-the-record findings as to whether McAllister established the existence of purposeful race discrimination in the selection of his jury, and whether his *Batson* challenge requires that his

conviction be reversed." *Id.* Specifically, we directed the district court to consider "all evidence, including juror questionnaires, that bear on the issue of racial animosity." *Id.* at 583.

On remand the district court ordered briefing. On November 6, 2012, the district court held a hearing on the Government's proffered reasons for exercising the contested peremptory challenge—Juror Ewing's unemployed status and his law enforcement background. On December 11, 2012, the district court entered an order finding that McAllister's *Batson* claim was meritless. McAllister appeals, arguing that the district court was clearly erroneous in rejecting his *Batson* claim. He also claims that it failed to comply with this Court's mandate. For the reasons that follow, we affirm the district court.

## ANALYSIS

We review a *Batson* determination "'with great deference,' under a clearly erroneous standard." *United States v. Cecil*, 615 F.3d 678, 685 (6th Cir. 2010) (quoting *United States v. Copeland*, 321 F.3d 582, 599 (6th Cir. 2003)). A finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves us with a "definite and firm conviction that a mistake has been committed." *United States v. Lalonde*, 509 F.3d 750, 763 (6th Cir. 2007).

The Equal Protection Clause guarantees a defendant "the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria." *Batson*, 476 U.S. at 85. A *Batson* challenge proceeds in three distinct and sequential steps. The procedure assigns burdens to the opponent of the strike, the proponent of the strike, and the court. The instant appeal only concerns step three. "At step three, if the proponent has produced a facially valid explanation for the strike, the trial court must decide whether the opponent has proved purposeful discrimination." *United*

*States v. Kimbrel*, 532 F.3d 461, 466 (6th Cir. 2008); *see also Snyder v. Louisiana*, 552 U.S. 472, 477 (2008).

To do so, the district court must assess the credibility of the proponent's race-neutral reasons for the strike in light of all evidence bearing on the issue of racial animosity. *See Snyder*, 552 U.S. at 478 ("[A]ll of the circumstances that bear upon the issue of racial animosity must be consulted."). This "places an affirmative duty on the district court to examine relevant evidence that is easily available" and prohibits it from "simply accept[ing] the prosecution's explanation on its face." *United States v. Torres-Ramos,* 536 F.3d 542, 559, 560 (6th Cir. 2008). The plausibility of the proponent's explanation and whether the proponent's explanation was supported in a side-by-side comparison with other empaneled jurors are among the factors a trial court may find relevant to making its credibility determination. *See Purkett v. Elem*, 514 U.S. 765, 768 (1995); *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005). The credibility determination of the proponent's race-neutral explanation must be "explicitly adjudicate[d]" so as to provide the reviewing court with a sufficient record to review the *Batson* challenge. *McCurdy v. Montgomery Cnty.*, 240 F.3d 512, 521 (6th Cir. 2001).

The district court found no pretext in the Government striking Juror Ewing because of his unemployment. McAllister argues this was clear error because the Government did not pursue the issue with white empaneled jurors who were not fully employed.

Juror Ewing was immediately identified as not fully employed because he indicated on his juror questionnaire that he was unemployed. Meanwhile Juror Carolyn Goldtrap, a white juror who was empaneled, indicated that she was a teacher. It was only during *voir dire* that Juror Goldtrap

revealed she was an interim teacher. The Government asserts it was not troubled by her partial employment because it demonstrated a diligent effort to legally earn a living. Juror Betty Goodowens, another white empaneled juror, indicated that she "worked from home." The Government claimed that it assumed Juror Goodowens referred to homemaking or self-employment rather than full unemployment. The district court concluded that striking Juror Ewing for his unemployment was sincere and plausible because McAllister was charged with financial fraud and could potentially emphasize his dire economic situation as a trial strategy.

While the Government's failure to fully investigate the employment status of other jurors could have been a sign of pretext, the court's acceptance of the Government's distinction between Juror Ewing's immediately apparent and straightforward unemployment status, Juror Goldtrap's interim-employment status, and Juror Goodowens' assumed homemaker/self-employed status was not clear error. The district court's finding of credibility, therefore, was not clearly erroneous. *See Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). Apart from the above-referenced facts which were taken as evidence of the prosecutor's sincerity, the district court specifically found the prosecuting attorney's demeanor to be sincere as well. Considering this combination of factors, we are not left with a "definite and firm conviction that a mistake has been committed." *Lalonde*, 509 F.3d at 763.

McAllister also asserts that the district court did not comply with this Court's mandate to consider juror questionnaires in its analysis. Although the district court did not reference juror questionnaires in its order, the questionnaires were discussed during the remand hearing. *See United*

*States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (quoting *United States v. Kikumura*, 947 F.2d

72, 76 (3d Cir. 1991)) ("The trial court must implement both the letter and the spirit of the mandate,

taking into account the appellate court's opinion and the circumstances it embraces.").[1]

McAllister contends that the district court erred in its comparative juror analysis by

comparing Juror Ewing with other excluded jurors. The district court did make such a comparison,

and we note that a district court "misapprehend[s] the standard" of comparative juror analysis when

it "juxtapos[es] the excluded jurors with other excluded jurors." *Cecil*, 615 F.3d at 687. "[T]he

district court's duty [is] to compare the excluded potential juror to other persons who were *not*

excluded by the prosecution." *Torres-Ramos*, 536 F.3d at 560 (emphasis in original). Nonetheless,

as demonstrated above, the district court properly compared Juror Ewing with several empaneled

jurors in addition to its misstep.

Because the district court was not clearly erroneous in crediting one of the Government's

proffered reasons, we find it unnecessary to address the others. For these reasons, the district court's

order rejecting McAllister's *Batson* claim is affirmed.

---

[1] We review a district court's interpretation of our own mandate *de novo*. *United States v. Parks*, 700 F.3d 775, 777 (6th Cir. 2012).