*335 DAMON J. KEITH, Circuit Judge,
dissenting.
Because I am disturbed by the majority’s conclusion on the Batson issue, I must dissent.
At trial, the defense used four peremptory strikes in the first round of jury selection. The Government raised a reverse-Batson challenge, which the district court granted, specifically because the four jurors struck were white and the two Defendants are black. The district court dismissed two of the jurors but seated two of the four that were struck by Defendants. In my view, the district court improperly granted the Government’s Batson challenge. I would reverse the district court’s judgement and remand for a new trial.
“We ‘review a district court’s determination of a Batson challenge with ‘great deference,’ under a clearly erroneous standard.’ ” United States v. Cecil, 615 F.3d 678, 685 (6th Cir.2010) (internal citations omitted); see also Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) {Miller-Ell). Nevertheless, “deference does not imply abandonment or abdication of judicial review.” Miller-El I, 537 U.S. at 340, 123 S.Ct. 1029. “[Djeference, by definition, does not preclude relief.” United States v. McAllister, 693 F.3d 572, 578 (6th Cir.2012). “[Wjhen ruling on alleged mistakes of law, the applicable standard of review is essentially de novo.” Cecil, 615 F.3d at 685 (quoting United States v. Kimbrel, 532 F.3d 461, 465-66 (6th Cir.2008)).
A Batson challenge entails three distinct and sequential steps: (1) the opponent of the peremptory strike must make a prima facie case that the challenged strike was based on race; (2) then the burden shifts to proponent of the peremptory challenge to articulate a race-neutral explanation for the strike; (3) finally, the trial court must determine whether the opponent of the peremptory strike has proven purposeful discrimination. Interestingly, the three-step analysis places a burden on the defendant, prosecutor, and the trial court. During step two, the burden of production shifts to the proponent of the peremptory strike; however, the burden of persuasion regarding racial motivation never shifts from the opponent of the strike.
United States v. McAllister, 693 F.3d at 578 (internal citations and quotations omitted).
In this case, the district court found that the Government successfully established a prima facie case that the challenged strikes were based on race at step one, and accepted Defendants’ race-neutral explanation for the strikes at step two. The district court also determined, at step three, that the strike was a result of purposeful discrimination. “Where, as here, the trial court has heard and ruled on the [opponent of the strike’s] asserted race neutral justification, the issue of whether the [proponent of the strike] made a sufficient prima facie showing becomes moot.” United States v. Simon, 422 Fed.Appx. 489, 494 (6th Cir.2011) (internal citations and quotations omitted). Therefore, the sole issue on appeal as to the Batson challenge is whether the peremptory strikes were intentionally discriminatory. Id.
The record in this case shows that the district court erred in applying the three-part test and that the record does not support a finding of purposeful discrimination in the reverse-Batson context. At the third step of the Batson inquiry, the trial court has a duty to assess whether the opponent of the strike has met its burden to prove purposeful discrimination. Hernandez v. New York, 500 U.S. 352, 363, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). The judge is required to assess the plausibility of the proponent’s race-neutral reason in *336 light of all evidence with a bearing on it. Miller-El v. Dretke, 545 U.S. 231, 251-52, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) CMiller-El II). We have held that the preceding command “places an affirmative duty on the district court to examine relevant evidence that is easily accessible.” United States v. Torres-Ramos, 536 F.3d 542, 560 (6th Cir.2008). The trial judge must consult “all of the circumstances that bear upon the issue of racial animosity.” Snyder v. Louisiana, 552 U.S. 472, 478, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008). “The trial court may not short-circuit the [Batson analysis] by consolidating any two of the steps.” Kimbrel, 532 F.3d at 466.
In my view, the district court made a number of errors. First, the district court improperly placed the burden of persuasion on the defense counsel. During step three, the burden of persuasion regarding racial motivation never shifts from the opponent of the strike — the Government, in this case. Kimbrel, 532 F.3d at 466. Once defense counsel provided the race-neutral reasons for striking jurors 1 and 6, the district court had the responsibility to assess whether the Government proved purposeful discrimination in light of the race-neutral justification that was provided by defense counsel. The record indicates that the district judge might have been confused about how to apply the burden-shifting test. The judge stated to defense counsel that “[i]n order to overcome a Batson [ ] challenge, you are going to have to give me specific reasons that you believe disqualify him from serving on the jury.” This is simply not true. The defense does not have to give specific reasons, as the law is very clear that the proponent of the challenge need only give a race-neutral reason for the strike. See McAllister, 693 F.3d at 579 (“It is well settled that [the race-neutral explanation at step two] need not be particularly persuasive or plausible.”). More importantly, however, the law is equally clear that the burden remains with the party opposing the peremptory strike. See Kimbrel, 532 F.3d at 466.
Because the district court improperly placed the burden of persuasion on defense counsel to rebut the prosecution’s claim of discrimination, its determination as to purposeful discrimination was similarly flawed. Because of the district court’s misunderstanding of the burden-shifting nature of the test, the district court did not properly follow the Batson test at step three. At step three, the district judge stated that he did not think the reasons were plausible, but stated no specific reasons why. The district judge was careful to engage in a rote recitation of the Batson steps, however, the district court’s findings at step three were conclu-sory and insufficient. The district judge, after a break and additional research on the issue, reiterated the steps of the test and granted the challenge.
The district judge stated that there was a prima facie case for the sole reason that four challenges by the defense were to Caucasian jurors and the Defendants were African-American. Then he stated that Defendants set forth race-neutral reasons at step two. But at step three, the district judge stated that the court had to “assess the proponent’s credibility under all the pertinent circumstances and weigh the asserted justification under the totality of the circumstances.” He went on to say he did not think the reasons were plausible and that the “prima facie case outweighed the proponent’s justification under all circumstances of the case.”
The district judge failed to explain what “all of the circumstances of the case” were or why the prosecution’s, prima facie case outweighed the proponent’s justification. To the extent that the district court attempted to do so, the district court’s rea *337 sons were insufficient to support a finding of purposeful discrimination. In this case, the central issue reflected on the record is that the defense struck four white jurors and that the final jury pool consisted of nine white jurors and five black jurors— which is still a significantly higher percentage of Caucasian to African-American jurors. The defense attorney, on the record, stated that because there are more white jurors, “[i]t lent in the favor that those [the defendants] would strike would have a higher potential to be Caucasian.” I agree.
This type of per se finding of intentional discrimination in the reverse-Batson context based solely on the number of strikes against a racial group without more has been rejected by the Sixth Circuit more than once and we reject it again. See e.g., United States v. Sangineto-Miranda, 859 F.2d 1501, 1521 (6th Cir.1988); United States v. Jackson, 983 F.2d 1069, 1069 (6th Cir.1993). The Supreme Court and the Sixth Circuit have elaborated on the issue of what the “relevant circumstances” would be to raise an inference of discrimination at the first step. Because the district court ruled on the ultimate issue after the defense offered race-neutral reasons, the district court’s findings as to step one are moot on appeal; however, the analysis at step one is instructive here. Because the findings here would have been insufficient to establish a prim a facie case, the circumstances are similarly insufficient to meet the higher threshold of purposeful discrimination at the final step without more.
In Batson, the Supreme Court stated that illustrative considerations “include whether there was a pattern of strikes against jurors of a particular race, as well as the [opponent of the strike’s] questions and comments during voir dire.” Jackson, 983 F.2d at 1069 (quoting Batson, 476 U.S. at 97, 106 S.Ct. 1712). This Court has rejected, on multiple occasions, “a per se rule that a showing by the [opponent of the strike] that [a party] used all its peremptory challenges against [a particular race], without more, makes out a prima facie case of intentional discrimination.” Id. (citing Sangineto-Miranda, 859 F.2d at 1521). Factors to consider are:
1) the racial composition of the initial group seated and the final jury panel sworn; 2) the number of peremptory strikes allowed each side; and 3) the race of those who were struck or excused from the jury panel throughout the voir dire (whether for cause or by a peremptory challenge), the order of strikes, and by whom they were exercised. In an appropriate case, it may also be useful to consider evidence as to the percentage of the “cognizable racial group” in the jury pool, or the racial composition of the district wherein the jury pool is selected.
Sangineto-Miranda, 859 F.2d at 1521.
The record is devoid of any information that would give this Court the ability to review the decision of whether there was in fact intentional discrimination or how the district court came to its conclusion. We do not know what the racial make up of the jury pool was. The district court placed utmost importance on the fact that four white jurors were struck by the two black defendants in the first round of jury selection. Typically, a jury pool is mostly white, which would make it difficult for any party to not consistently strike white jurors. After the district court considered the four jurors the prosecution sought to keep on the jury, the court itself excused two white jurors for cause, leaving only two jurors in question. Each defendant only struck one juror. Each Defendant’s use of only one peremptory against a white juror is insufficient to be deemed purpose *338 ful discrimination, especially when Defendants provided race-neutral reasons that are typical of the type that are used for a peremptory. See Snyder v. Louisiana, 552 U.S. 472, 479, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) (“peremptory challenges often invoke a juror’s demeanor (e.g., nervousness, inattention)”).
While it is undisputed that “determinations of credibility and demeanor lie peculiarly within a trial judge’s province,” and that “in the absence of exceptional circumstances, we would defer to the trial court,” here the record “does not show that the trial judge actually made a finding that an attorney credibly relied on the demeanor in exercising a strike.” Snyder, 552 U.S. at 477, 479, 128 S.Ct. 1203 (internal quotations, citations, and alterations omitted). As to Juror Segars — the juror struck for being a follower — the district court stated “I don’t find, based on the responses from defense counsel that they had any legitimate basis to challenge Ms. Segars other than they said she was “wishy washy’ ... [and] that she seemed to be more of a follower than a leader.” As to Juror McCarthy — the juror who glared at Defendant — the district judge stated “I haven’t heard anything come out of [Juror] McCarthy that indicates that he would not be fair and impartial.” These statements from the court indicate that the district judge did not think they could be struck for cause, but they do not indicate a determination as to the finding of purposeful discrimination in the exercise of peremptory challenges. Following those statements, the district judge once again mentioned that the strikes by the black defendants could not be used against all white potential jurors. Here, the district court failed to recognize that Defendants did not have to prove that the jurors would not be fair and impartial to use a peremptory. To properly exercise a peremptory strike, the lawyer does not have to give a for-cause reason; and the question is whether the judge believes the lawyer at step three of Batson.
Here, the record does not show that the district court actually made a determination concerning whether Juror Segar was “wishy washy” or whether Juror McCarthy was glaring at Defendant. With respect to Juror McCarthy, “[i]t is possible that the judge did not have any impression one way or the other concerning Mr. [McCarthy’s] demeanor.” Snyder, 552 U.S. at 479, 128 S.Ct. 1203. The district judge did not say whether he paid attention to McCarthy’s demeanor or why he did not believe Defendant.[1] The district judge might have found it unnecessary to do so because he erroneously thought that Defendants had to provide specific reasons for their use of peremptory strikes or because he erroneously thought the striking of only white jurors was per se discriminatory. “[W]e cannot presume that the trial judge [discredited the [defense’s] assertion[s].” Id. at 479, 128 S.Ct. 1203.
The totality of circumstances, as reflected in the record, do not support the district court’s ruling. The district judge granted the challenge in the first round of jury selection. In a reverse-Batson challenge, it is even more critical that the district court consider each round of jury selection before ruling on the ultimate is *339 sue of purposeful discrimination. Considering the fact that juries are nationally mostly white, it would be likely that striking a white juror would just lead to another white juror being selected in his/her place. The district judge in this case did not even complete jury selection before determining whether there was a pattern of alleged discrimination. This was in error. The premature grant of the Batson challenge precluded the trial court from considering the totality of the circumstances, as it is required to do. As noted by the defense, the district court’s per se finding of discriminatory intent based on the defendants only striking white jurors in the first round, this case could establish a precedent which would require a black/minority defendant to strike a minority from the pool simply for the sake of avoiding even the appearance of racial discrimination in a district — and nation— where black jurors are vastly underrepresented and black defendants vastly overrepresented. This, at a time when the nation is making an effort to remove racist systems and structures from its criminal justice system, is a particularly cruel and intolerable indulgence in the most extreme myths concerning so-called reverse racism.
In my view, while the district court carefully engaged in rote recitation of the Bat-son analysis, the district court clearly erred in its application of the test, its understanding of the law, and in supporting a finding of alleged purposeful discrimination. Because there is no realistic possibility that this issue could be profitably explored further on remand at this late date, the district court’s judgment should be reversed and the case should be remanded for further proceedings. See Snyder, 552 U.S. at 486, 128 S.Ct. 1203.
I respectfully dissent.
1. The precise standard as given in Batson itself is a clear and reasonably specific explanation of the legitimate reasons for the strike.

. The district judge stated that Defendants could have claimed that probably half of the jurors were glaring at Defendants. This statement does not indicate that the judge made a finding as to Juror McCarthy's demeanor. The judge does not state that other jurors were looking at Defendants the same way McCarthy was. Instead, it’s a general dismissive statement that seems to be based on his per se finding of discrimination. His next sentence was "I mean that in and of itself in my opinion is not sufficient to excuse a juror when all the challenges that the defendants made were to Caucasions and in this case the defendants are both African-American.” *339 Batson v. Kentucky, 476 U.S. 79, 98 n. 20, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).