NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0852n.06

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Sep 27, 2013 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| LAWRENCE HARPER; TRAVIS BOWDERY, | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| Defendants-Appellants. | ) | |

Before: KEITH, CLAY, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. On September 15, 2007, Charlie Ealy was leaving the Silver Spoon nightclub parking lot in his 2006 Cadillac DTS when he saw a woman he knew leaving the club. He stopped and talked to her for a few minutes. A man approached them, armed with a handgun. At the same time, a car pulled up and blocked in Ealy's car. Eventually, the gunman and driver—armed with a tire iron—forced Ealy out of the Cadillac and onto the ground. The two men stole Ealy's car, watch, necklace, bracelet, and two rings. A jury later determined that the gunman was Lawrence Harper and found him guilty of carjacking, *see* 18 U.S.C. § 2119, felon in possession of a firearm, *see* 18 U.S.C. § 922, and use of a firearm during the commission of a crime of violence, *see* 18 U.S.C. § 924(c). The jury also determined that the driver was Travis Bowdery and found him guilty of carjacking, *see* 18 U.S.C. § 2119, felon in possession of a firearm, *see* 18 U.S.C. § 922, use of a firearm during the commission of a crime of violence, *see* 18 U.S.C. § 924(c), obstruction of

a criminal investigation, *see* 18 U.S.C. § 1510(a), and tampering with witness testimony, *see* 18 U.S.C. § 1512(b). The district court sentenced Harper to 204 months' imprisonment and Bowdery to 320 months' imprisonment. Harper challenges his conviction and sentence, and Bowdery challenges his conviction.

## A.

Harper and Bowdery challenge the sufficiency of the evidence supporting their convictions. "We review de novo a challenge to the sufficiency of the evidence supporting a criminal conviction." *United States v. Howard*, 621 F.3d 433, 459 (6th Cir. 2010) (internal quotation marks omitted). Our review of a guilty verdict "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

Harper and Bowdery first challenge the sufficiency of the evidence supporting their convictions for being felons in possession of a firearm, in violation of 18 U.S.C. § 922(g). The statute requires proof of three elements: first, "that the defendant had a previous felony conviction," second, "that the defendant knowingly possessed the firearm specified in the indictment," and third, "that the firearm traveled in or affected interstate commerce." *United States v. Morrison*, 594 F.3d 543, 544 (6th Cir. 2010) (internal quotation marks and citation omitted). Harper and Bowdery do not contend the first and third elements. The issue, then, is whether the government proved that Harper and Bowdery each possessed the firearm.

The jury had sufficient basis to conclude that each of them did. As to Harper, Ealy positively identified Harper as the person who pointed the gun at him during the robbery. Ealy also testified

that Harper was within a few feet of him at the time and did nothing to conceal his face. In addition, Ealy identified Harper in a photo lineup as the gunman immediately following the robbery. From this evidence, a rational jury could conclude that Harper possessed the gun.

There was likewise evidence that Bowdery possessed the firearm. A Memphis Police officer, Detective Cezar Polk, discovered the firearm in the bedroom of Bowdery's girlfriend, Daschia Lathan. Lathan's mother and two sisters also testified that Lathan did not own any guns and that Bowdery often spent the night in Lathan's bedroom. Moreover, multiple witnesses testified that Bowdery urged Lathan to confess to the possession charge so that he could avoid conviction. And none of those witnesses had ever seen Lathan with a gun or knew of her owning one. Victoria Wilson—Bowdery's former girlfriend—testified that Bowdery told her that the gun found in Lathan's bedroom was his. Ealy and Erika Taylor also testified that the gun found in Lathan's bedroom matched the gun used during the robbery. This evidence supports the jury's finding that Bowdery at some point possessed the gun.

Harper and Bowdery next argue that there was insufficient evidence to support their carjacking convictions. To obtain a carjacking conviction, the government must "prove that the defendant, (1) with intent to cause death or serious bodily harm, (2) took a motor vehicle, (3) that had been transported, shipped, or received in interstate or foreign commerce, (4) from the person or presence of another (5) by force and violence or intimidation." *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008).

The intent element is the one the defendants challenge here. "Congress' inclusion of the intent element requires the Government to prove beyond a reasonable doubt that the defendant would

have at least attempted to seriously harm or kill the driver if that action had been necessary to complete the taking of the car." *Holloway v. United States*, 526 U.S. 1, 11–12 (1999).

Here, Ealy testified that Harper pointed the gun at him at close range and told him to get out of the Cadillac. That action alone "is the equivalent of issuing a direct verbal threat to kill or harm" and supports the jury's finding of specific intent. *Fekete*, 535 F.3d at 482. Ealy also testified that both Harper and Bowdery—armed with a tire iron—physically forced him to the ground. That too indicates an intent on the part of the defendants to act violently. *See United States v. Adams*, 265 F.3d 420, 425 (6th Cir. 2001). Sufficient evidence supports each defendant's conviction.

Harper also argues that there was insufficient evidence to support his conviction for being in possession of a firearm during a carjacking, in violation of 18 U.S.C. § 924(c). Harper advances nothing new here; he repeats his gun possession and carjacking arguments. Because we reject those arguments, we likewise reject this one.

Bowdery advances two sufficiency arguments independent of Harper. First, Bowdery argues that there was insufficient evidence to support his conviction for obstruction of a criminal investigation, in violation of 18 U.S.C. § 1510. Ealy testified to the following at trial: Bowdery was one of the two individuals who stole his jewelry and car; Ealy's friend told him that he knew Bowdery and that he could get his jewelry back if he told investigators that Bowdery did not commit the carjacking; Bowdery's cousin coordinated with Ealy to return the jewelry; Ealy falsely told investigators that Bowdery and Harper did not rob him; and Bowdery's cousin returned Ealy's jewelry. The government also admitted the jewelry returned to Ealy as evidence. This testimony and evidence was sufficient to support the jury's conviction.

-4-

Bowdery also challenges his witness-intimidation conviction, in violation of 18 U.S.C. 1512(b)(1). Multiple people testified that Bowdery attempted to convince Lathan to confess to the gun possession charge. The government also provided recordings of Bowdery arranging to have individuals approach Lathan to confess to the possession charge. And Lathan's mother testified that Bowdery threatened her to make Lathan confess. Thus, the evidence too is sufficient to support Bowdery's conviction.

B.

Harper and Bowdery next argue that the district court erred in sustaining the government's *Batson* objection to two of their peremptory challenges. "We review a district court's determination of a *Batson* challenge with great deference, under a clearly erroneous standard." *United States v. Copeland*, 321 F.3d 582, 599 (6th Cir. 2003) (internal quotation marks and citation omitted). During *voir dire*, the defendants exercised peremptory challenges against four white jurors. The defendants did not, however, move to strike any black jurors. The government challenged these strikes under *Batson v. Kentucky*, 476 U.S. 79 (1986). The district court excused two of the jurors but seated the other two.

"*Batson* applies to peremptory challenges based on race[.]" *United States v. Kimbrel*, 532 F.3d 461, 466 (6th Cir. 2008). A three-step burden-shifting inquiry governs *Batson* challenges. *Hernandez v. New York*, 500 U.S. 352, 358–59 (1991). First, the "party opposing the strike must establish a prima facie case of race [] discrimination." *Kimbrel*, 532 F.3d at 466. Second, if a prima facie case is established, the burden shifts to the proponent of the strike to articulate a race-neutral explanation for the challenges in question. *Id.* Third, if the proponent provides a valid explanation

for the strike, "the trial court must decide whether the opponent has proved purposeful discrimination." *Id.*

During *voir dire*, the government objected to Harper and Bowdery's peremptory strikes of Jurors Segars, Nelms, McCarthy, and Gates. After the government advanced a prima facie case of discrimination based on the defendants striking only white jurors, the district court moved to step two under *Batson* and asked the defendants' counsel to provide a nondiscriminatory explanation. The district court accepted the defendants explanation for Jurors Nelms (a Navy veteran who showed a "reluctance to answer") and Gates (a victim of auto theft).

But the court pressed the defendants' counsel on Jurors Segars and McCarthy. As for Juror Segars, Harper's counsel said that she was "wishy washy" and "a sheep" and that she was "going to follow along and do what everybody else tells her." The court asked Harper's counsel if there was "any specific answer that she gave that you are concerned about[,]" to which he again answered that "all I remember thinking is that woman is a sheep, she's going to do what everyone else does" but that "it was a last-minute decision to strike her" and "[i]f you leave her on, I don't have any problem." As to Juror McCarthy, Bowdery's counsel stated that it was Bowdery's choice to strike McCarthy and that although "he didn't have very much," Bowdery said that McCarthy was "glaring" at him. The court then found that the defendants had offered a race-neutral justification for each of the peremptory strikes.

The court thereafter moved to step three of the *Batson* analysis and concluded that, "under the totality of the circumstances . . . the justification that was produced by the defendants was not plausible and that the government's prima facie case outweighed" the defendants.

The record supports the district court's decision here. Indeed, *Batson* requires a district court to determine whether a race-neutral reason offered for a challenge is credible. *See Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam) ("At [the third] stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination"). The district court made that determination when it stated that the defendants' reasons for striking Jurors Segars and McCarthy "were not plausible under all of the circumstances." On this record, we have no basis to say that the court's determination was clearly erroneous.

## C.

Harper's next argument concerns his sentence. At his sentencing hearing, Harper asked that the district court impose his federal sentence concurrent to his 18-year state sentence for two separate carjacking convictions. Harper's request was based, in part, on his plea agreement with state prosecutors, which said his state sentences would run concurrent to any federal sentence. The district court denied that request and instead made his federal sentence run consecutively to his state sentence. We review the district court's sentencing determination "under a deferential abuse-of-discretion standard for reasonableness." *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (quotation marks and citation omitted).

Generally, a district court has discretion to decide whether the sentence should run consecutive to or concurrent with the previous one. *United States v. Johnson*, 640 F.3d 195, 208 (6th Cir. 2011) (citing 18 U.S.C. § 3584(a)). When making that decision, however, the district court must consider the sentencing factors specified in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3584(a). The court should also consider the Guidelines factors articulated in U.S.S.G. § 5G1.3.

-7-

When "the court makes generally clear the rationale under which it has imposed the consecutive sentence . . ., it does not abuse its discretion." *United States v. Owens*, 159 F.3d 221, 230 (6th Cir. 1998). The court made its rationale reasonably clear here. First, the court noted that Harper "has an extremely violent history involving assault, carjacking, theft of property, [and] lewd acts." *See* 18 U.S.C. § 3553(a)(1). Next, the court stated that Harper's sentence should "reflect the seriousness of the offense," promote respect for the law," and "provide just punishment for the offense." *See* 18 U.S.C. § 3553(a)(2)(A). Finally, the court explained that it was imposing a consecutive sentence because Harper "would likely only be serving 30 percent" of his state sentence, which "would be something less than six years." *See* U.S.S.G. § 5G1.3(c). That is all that the district court was required to do.

The district court's judgment is affirmed.

**DAMON J. KEITH, Circuit Judge, dissenting.** Because I am disturbed by the majority's conclusion on the *Batson* issue, I must dissent.

At trial, the defense used four peremptory strikes in the first round of jury selection. The Government raised a reverse-*Batson* challenge, which the district court granted, specifically because the four jurors struck were white and the two Defendants are black. The district court dismissed two of the jurors but seated two of the four that were struck by Defendants. In my view, the district court improperly granted the Government's *Batson* challenge. I would reverse the district court's judgement and remand for a new trial.

"We 'review a district court's determination of a *Batson* challenge with 'great deference,' under a clearly erroneous standard.'" *United States v. Cecil*, 615 F.3d 678, 685 (6th Cir. 2010) (internal citations omitted); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (*Miller-El I*). Nevertheless, "deference does not imply abandonment or abdication of judicial review." *Miller-El I*, 537 U.S. at 340. "[D]eference, by definition, does not preclude relief." *United States v. McAllister*, 693 F.3d 572, 578 (6th Cir. 2012). "[W]hen ruling on alleged mistakes of law, the applicable standard of review is essentially *de novo*." *Cecil*, 615 F.3d at 685(quoting *United States v. Kimbrel*, 532 F.3d 461, 465–66 (6th Cir. 2008)).

> A *Batson* challenge entails three distinct and sequential steps: (1) the opponent of the peremptory strike must make a prima facie case that the challenged strike was based on race; (2) then the burden shifts to proponent of the peremptory challenge to articulate a race-neutral explanation for the strike; (3) finally, the trial court must determine whether the opponent of the peremptory strike has proven purposeful discrimination. Interestingly, the three-step analysis places a burden on the defendant, prosecutor, and the trial court. During step two, the burden of *production* shifts to the proponent of the peremptory strike; however, the burden of persuasion regarding racial motivation never shifts from the opponent of the strike.

-9-

*McAllister*, 693 F.3d at 578 (internal citations and quotations omitted).

In this case, the district court found that the Government successfully established a *prima facie* case that the challenged strikes were based on race at step one, and accepted Defendants' race-neutral explanation for the strikes at step two. The district court also determined, at step three, that the strike was a result of purposeful discrimination. "Where, as here, the trial court has heard and ruled on the [opponent of the strike's] asserted race neutral justification, the issue of whether the [proponent of the strike] made a sufficient *prima facie* showing becomes moot." *United States v. Simon*, 422 F. App'x 489, 494 (6th Cir. 2011) (internal citations and quotations omitted). Therefore, the sole issue on appeal as to the *Batson* challenge is whether the peremptory strikes were intentionally discriminatory. *Id.*

The record in this case shows that the district court erred in applying the three-part test and that the record does not support a finding of purposeful discrimination in the reverse-*Batson* context. At the third step of the *Batson* inquiry, the trial court has a duty to assess whether the opponent of the strike has met its burden to prove purposeful discrimination. *Hernandez v. New York*, 500 U.S. 352, 363 (1991). The judge is required to assess the plausibility of the proponent's race-neutral reason in light of all evidence with a bearing on it. *Miller-El v. Dretke*, 545 U.S. 231, 251–52 (2005) (*Miller-El II*). We have held that the preceding command "places an affirmative duty on the district court to examine relevant evidence that is easily accessible." *United States v. Torres-Ramos*, 536 F.3d 542, 560 (6th Cir. 2008). The trial judge must consult "all of the circumstances that bear upon the issue of racial animosity." *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008). "The trial court may

not short-circuit the [*Batson* analysis] by consolidating any two of the steps." *Kimbrel*, 532 F.3d at 466.

In my view, the district court made a number of errors. First, the district court improperly placed the burden of persuasion on the defense counsel. During step three, the burden of persuasion regarding racial motivation never shifts from the opponent of the strike—the Government, in this case. *Kimbrel*, 532 F.3d at 466. Once defense counsel provided the race-neutral reasons for striking jurors 1 and 6, the district court had the responsibility to assess whether the Government proved purposeful discrimination in light of the race-neutral justification that was provided by defense counsel. The record indicates that the district judge might have been confused about how to apply the burden-shifting test. The judge stated to defense counsel that "[i]n order to overcome a *Batson*[] challenge, you are going to have to give me specific reasons that you believe disqualify him from serving on the jury." This is simply not true. The defense does not have to give specific reasons, as the law is very clear that the proponent of the challenge need only give a race-neutral reason for the strike. *See McAllister*, 693 F.3d at 579 ("It is well settled that [the race-neutral explanation at step two] need not be particularly persuasive or plausible."). More importantly, however, the law is equally clear that the burden remains with the party opposing the peremptory strike. *See Kimbrel*, 532 F.3d at 466.

Because the district court improperly placed the burden of persuasion on defense counsel to rebut the prosecution's claim of discrimination, its determination as to purposeful discrimination was similarly flawed. Because of the district court's misunderstanding of the burden-shifting nature of the test, the district court did not properly follow the *Batson* test at step three. At step three, the

-11-

district judge stated that he did not think the reasons were plausible, but stated no specific reasons why. The district judge was careful to engage in a rote recitation of the *Batson* steps, however, the district court's findings at step three were conclusory and insufficient. The district judge, after a break and additional research on the issue, reiterated the steps of the test and granted the challenge.

The district judge stated that there was a *prima facie* case for the sole reason that four challenges by the defense were to Caucasian jurors and the Defendants were African-American. Then he stated that Defendants set forth race-neutral reasons at step two. But at step three, the district judge stated that the court had to "assess the proponent's credibility under all the pertinent circumstances and weigh the asserted justification under the totality of the circumstances." He went on to say he did not think the reasons were plausible and that the "*prima facie* case outweighed the proponent's justification under all circumstances of the case."

The district judge failed to explain what "all of the circumstances of the case" were or why the prosecution's *prima facie* case outweighed the proponent's justification. To the extent that the district court attempted to do so, the district court's reasons were insufficient to support a finding of purposeful discrimination. In this case, the central issue reflected on the record is that the defense struck four white jurors and that the final jury pool consisted of nine white jurors and five black jurors—which is still a significantly higher percentage of Caucasian to African-American jurors. The defense attorney, on the record, stated that because there are more white jurors, "[i]t lent in the favor that those [the defendants] would strike would have a higher potential to be Caucasian." I agree.

This type of *per se* finding of intentional discrimination in the reverse-*Batson* context based solely on the number of strikes against a racial group without more has been rejected by the Sixth Circuit more than once and we reject it again. *See e.g.*, *United States v. Sargineto-Miranda*, 859 F.2d 1501, 1521 (6th Cir. 1988); *United States v. Jackson*, 983 F.2d 1069, 1069 (6th Cir. 1993). The Supreme Court and the Sixth Circuit have elaborated on the issue of what the "relevant circumstances" would be to raise an inference of discrimination at the first step. Because the district court ruled on the ultimate issue after the defense offered race-neutral reasons, the district court's findings as to step one are moot on appeal; however, the analysis at step one is instructive here. Because the findings here would have been insufficient to establish a *prima facie* case, the circumstances are similarly insufficient to meet the higher threshold of purposeful discrimination at the final step without more.

In *Batson*, the Supreme Court stated that illustrative considerations "include whether there was a pattern of strikes against jurors of a particular race, as well as the [opponent of the strike's] questions and comments during voir dire." *Jackson*, 983 F.2d at 1069 (quoting *Batson*, 476 U.S. at 97). This Court has rejected, on multiple occasions, "a *per se* rule that a showing by the [opponent of the strike] that [a party] used all its peremptory challenges against [a particular race], without more, makes out a *prima facie* case of intentional discrimination." *Id.* (citing *Sangineto-Miranda*, 859 F.2d at 1521). Factors to consider are:

> 1) the racial composition of the initial group seated and the final jury panel sworn;
> 2) the number of peremptory strikes allowed each side; and 3) the race of those who were struck or excused from the jury panel throughout the voir dire (whether for cause or by a peremptory challenge), the order of strikes, and by whom they were exercised. In an appropriate case, it may also be useful to consider evidence as to the

-13-

percentage of the "cognizable racial group" in the jury pool, or the racial composition of the district wherein the jury pool is selected.

*Sangineto-Miranda*, 859 F.2d at 1521.

The record is devoid of any information that would give this Court the ability to review the decision of whether there was in fact intentional discrimination or how the district court came to its conclusion. We do not know what the racial make up of the jury pool was. The district court placed utmost importance on the fact that four white jurors were struck by the two black defendants in the first round of jury selection. Typically, a jury pool is mostly white, which would make it difficult for any party to not consistently strike white jurors. After the district court considered the four jurors the prosecution sought to keep on the jury, the court itself excused two white jurors for cause, leaving only two jurors in question. Each defendant only struck one juror. Each Defendant's use of only one peremptory against a white juror is insufficient to be deemed purposeful discrimination, especially when Defendants provided race-neutral reasons that are typical of the type that are used for a peremptory. *See Snyder v. Louisiana*, 552 U.S. 472, 479 (2008) ("[P]eremptory challenges often invoke a juror's demeanor (*e.g.*, nervousness, inattention)").

While it is undisputed that "determinations of credibility and demeanor lie peculiarly within a trial judge's province," and that "in the absence of exceptional circumstances, we would defer to the trial court," here the record "does not show that the trial judge actually made a finding that an attorney credibly relied on the demeanor in exercising a strike." *Snyder*, 552 U.S. at 477, 479 (internal quotations, citations, and alterations omitted). As to Juror Segars—the juror struck for being a follower—the district court stated "I don't find, based on the responses from defense counsel

that they had any legitimate basis to challenge Ms. Segars other than they said she was 'wishy washy' . . . [and] that she seemed to be more of a follower than a leader." As to Juror McCarthy—the juror who glared at Defendant—the district judge stated "I haven't heard anything come out of [Juror] McCarthy that indicates that he would not be fair and impartial." These statements from the court indicate that the district judge did not think they could be struck for cause, but they do not indicate a determination as to the finding of purposeful discrimination in the exercise of peremptory challenges. Following those statements, the district judge once again mentioned that the strikes by the black defendants could not be used against all white potential jurors. Here, the district court failed to recognize that Defendants did not have to prove that the jurors would not be fair and impartial to use a peremptory. To properly exercise a peremptory strike, the lawyer does not have to give a for-cause reason; and the question is whether the judge believes the lawyer at step three of *Batson*.

Here, the record does not show that the district court actually made a determination concerning whether Juror Segar was "wishy washy" or whether Juror McCarthy was glaring at Defendant. With respect to Juror McCarthy, "[i]t is possible that the judge did not have any impression one way or the other concerning Mr. [McCarthy's] demeanor." *Snyder*, 552 U.S. at 479. The district judge did not say whether he paid attention to McCarthy's demeanor or why he did not believe Defendant.[1] The district judge might have found it unnecessary to do so because he

---

[1]The district judge stated that Defendants could have claimed that probably half of the jurors were glaring at Defendants. This statement does not indicate that the judge made a finding as to Juror McCarthy's demeanor. The judge does not state that other jurors were looking at Defendants the same way McCarthy was. Instead, it's a general dismissive statement that seems to be based on

erroneously thought that Defendants had to provide specific reasons for their use of peremptory strikes or because he erroneously thought the striking of only white jurors was *per se* discriminatory. "[W]e cannot presume that the trial judge [dis]credited the [defense's] assertion[s]." *Id.* at 479.

The totality of circumstances, as reflected in the record, do not support the district court's ruling. The district judge granted the challenge in the first round of jury selection. In a reverse-*Batson* challenge, it is even more critical that the district court consider each round of jury selection before ruling on the ultimate issue of purposeful discrimination. Considering the fact that juries are nationally mostly white, it would be likely that striking a white juror would just lead to another white juror being selected in his/her place. The district judge in this case did not even complete jury selection before determining whether there was a pattern of alleged discrimination. This was in error. The premature grant of the *Batson* challenge precluded the trial court from considering the totality of the circumstances, as it is required to do. As noted by the defense, the district court's *per se* finding of discriminatory intent based on the defendants only striking white jurors in the first round, this case could establish a precedent which would require a black/minority defendant to strike a minority from the pool simply for the sake of avoiding even the appearance of racial discrimination in a district—and nation—where black jurors are vastly underrepresented and black defendants vastly overrepresented. This, at a time when the nation is making an effort to remove racist systems

his *per se* finding of discrimination. His next sentence was "I mean that in and of itself in my opinion is not sufficient to excuse a juror when all the challenges that the defendants made were to Caucasions and in this case the defendants are both African-American."

and structures from its criminal justice system, is a particularly cruel and intolerable indulgence in the most extreme myths concerning so-called reverse racism.

In my view, while the district court carefully engaged in rote recitation of the *Batson* analysis, the district court clearly erred in its application of the test, its understanding of the law, and in supporting a finding of alleged purposeful discrimination. Because there is no realistic possibility that this issue could be profitably explored further on remand at this late date, the district court's judgment should be reversed and the case should be remanded for further proceedings. *See Snyder*, 552 U.S. at 486.

I respectfully dissent.

**CLAY, Circuit Judge, concurring.** While I agree with the result and the reasoning of the majority opinion, I write separately to address two points raised by the dissent. The dissent states that the proponent of a strike does not have to give specific reasons for its challenge to a juror, but merely race-neutral reasons. This is undoubtedly a correct statement of the law. However, the dissent characterizes the lower court as having shifted the burden of persuasion, while in my opinion, the court merely asked defense counsel to provide his reasoning, which is entirely customary in the context of a *Batson* challenge. Although the dissent is correct that the reason does not need to be entirely "specific," but only "race-neutral,"[1] defense counsel's inability to articulate its reasons for the strike was a perfectly valid ground upon which the district court could evaluate the credibility and plausibility of the race-neutral reasons offered. In other words, while the proponent of the strike need not have specific reasons, nothing prevents a trial court from asking for specific reasons in aiding its evaluation of the credibility or plausibility of the proponent's proffered reason for the strike.

The dissent also seeks to undermine the existence of a *prima facie* case for racial discrimination. While it concedes that after a district court performs the substantive analysis the existence of a *prima facie* case is irrelevant, the dissent goes on to criticize the district court for having found evidence of racial discrimination without a true pattern, in part because the *Batson* challenge was made during the first round of jury selection. But logically, that assumes that for a *Batson* challenge to be valid, there must be a pattern of racial discrimination. No such requirement

---

[1] The precise standard as given in *Batson* itself is a clear and reasonably specific explanation of the legitimate reasons for the strike. *Batson v. Kentucky*, 476 U.S. 79, 98 n.20 (1986).

exists. While a pattern of strikes against members of a particular racial group might be evidence of impermissible discrimination, a *Batson* challenge can succeed regardless of whether or not a pattern exists; if the strike was impermissibly motivated by the race of the juror, then *Batson* applies, even in cases where there has only been one strike, and thus no logical possibility of a pattern. *United States v. Mahan*, 190 F.3d 416, 424–25 (6th Cir. 1999); *see also Powers v. Ohio*, 499 U.S. 400, 409 (1991) (right not be excluded from petit juries on account of one's race belongs to the juror). While I am sympathetic to the concerns expressed by the dissent and to the argument that the district court should have been more explicit as to why it found evidence of racial bias, our review of this decision is highly deferential. There is nothing in the record that suggests the trial court behaved improperly, and given that deferential review, I agree that the judgment of the district court should be affirmed.